Matthew M. Levy, J.
This suit is for specific performance of an agreement allegedly entered into by way of correspondence between the parties. The subject matter involved is a painting entitled ‘1 Un Village ’ ’, bearing the name of the famed artist, Maurice Utrillo (together with an authenticating certificate of the painter’s widow, Mme. Lucie Utrillo). The plaintiff moves before me for an injunction pendente lite to restrain the disposition by the defendant of the painting and the certificate, and the defendant cross-moves for summary judgment dismissing the complaint.
In her complaint, in paragraph Third, the plaintiff alleges the purchase, for the sum of $2,900, of the painting on May 6, 1959, at the defendant’s auction rooms; in paragraph Fourth, advice from the defendant the next day of doubt as to authenticity; and, in paragraph Fifth, the plaintiff sets forth what she claims to be an independent and subsequent arrangement, which she . describes as follows: The “ plaintiff was to deposit the purchase price of $2,900.00 in escrow pending the determination of the authenticity by one Mr. [Paul] Pétrides [an expert on UtriEo’s works] in Paris, France, to whom the painting was to be sent at *260 the expense of the plaintiff. The condition of the said escrow was that if the painting proved genuine it would remain in the possession of the plaintiff and become her property and the escrow fund would be retained by the defendant; if on the other hand the painting proved not to be authentic and was returned to the defendant in good condition, the escrow fund would be returned to the plaintiff and the transaction deemed cancelled. ’ ’
It is undisputed that on May 6, 1959, the plaintiff made the purchase of the painting in question at the defendant’s gallery. Nor does the plaintiff dispute that the sale was made by the defendant as agent only and subject to the conditions which were set out in the defendant’s catalog, and that thus the plaintiff bought the painting “as is ”, without any representation as to genuineness, despite the fact that the authenticating certificate went along with the painting. It appears, nevertheless, that the defendant, in the course of its business practice, is desirous of having its customers satisfied, and thus, in reasonable circumstances, would cancel a sale. In this situation, the plaintiff was on May 7,1959, the day following the sale, advised by the defendant that authenticity was in doubt. It is wholly upon what thereafter occurred that the plaintiff relies, and, unless there emerged in the ensuing discussions and correspondence, a binding agreement which the plaintiff is entitled to have enforced, then the action must fail.
The first letter in the correspondence is dated May 7, 1959; the last on September 14, 1959. (This last refers to a letter of September 8, 1959, written by plaintiff’s attorney, which is not a part of this record.) I have carefully read all of the correspondence, and noted all of the telephonic conversations, presented on this submission. It would be of little profit to include the details of each communication in this resume, and to analyze here each word, spoken and written, as it travelled to and fro between the parties. Suffice it to say that the whole series presents nothing but offers and counteroffers, and that the negotiations did not freeze into agreement. Regardless of what the plaintiff may have thought was the subject of discussion, it is apparent that the defendant was simply trying to make arrangements with the plaintiff for the plaintiff’s own satisfaction in proving the painting, with entire willingness to rescind and refund if, with specified promptness, the painting was not proved genuine. There was no obligation on the defendant’s part to see to it that the later negotiations did culminate in a contract. They simply did not, and the result is that the plaintiff remains with the purchase. No arrangement had ripened at all which in any way would result in a superseding agreement *261 or affect the binding character of the purchase that the plaintiff had made at the sale on May 6, 1959.
It is to be noted once more that it is on the arrangement set forth in paragraph Fifth of the complaint that the action is based and by reason of which the plaintiff seeks specific performance, and that is all that the plaintiff seeks by the complaint—the specific performance of that alleged later agreement. Since the talks and the writings, taken separately or together, establish quite clearly that there was no meeting of the minds of the parties, that no definitive arrangement was in fact reached —which, as an alleged independent agreement between the plaintiff and the defendant, could be the subject of this action for specific performance, on the basis upon which alone the plaintiff has proceeded — the plaintiff’s present suit must necessarily be held to be meritless. In consequence, the defendant’s cross motion for summary judgment of dismissal is granted and the plaintiff’s motion for a temporary injunction is denied. This disposition, of course, does not concern itself with the rights of the respective parties in relation to the purchase itself.